UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SARA J. BROWN                                                      PLAINTIFF

v.                                              CIVIL ACTION NO. 3:06-CV-419-S

ROYAL CONSUMER PRODUCTS, LLC, et al.                               DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the defendants Royal Consumer Products, LLC ("RCP"), Mafcote, Inc. ("Mafcote"),[1] Beth Amburgey ("Amburgey"),[2] Charles Pelsor, Vickie Robinson, and Surveillance Team Members John/Jane Doe 1-99[3] (collectively, "Defendants"), to dismiss the Amended Complaint filed by the plaintiff, Sara J. Brown ("Brown") (DN 38).

## BACKGROUND

Brown was employed by RCP, a paper packaging and supply company, in various capacities from 1994 to 2007.  During Brown's employment at RCP, RCP employed a surveillance team to investigate employee theft and perform loss management surveillance.  On the night of August 1, 2005, Brown was summoned to Amburgey's office and told that she had been observed stealing RCP product by the surveillance team.  According to Brown, Amburgey questioned her about the alleged crime in the presence of five to seven Louisville Metro police officers for two and a half hours, during which time she was not allowed to speak to her co-workers.  Brown did not receive *Miranda* warnings at any time and alleges that she felt unable to leave.  Amburgey told Brown that unless she cooperated she would

---

[1] Mafcote is RCP's parent corporation.

[2] Amburgey was RCP's human resources director at the time of the incident giving rise to this action.

[3] Charles Pelsor, Vickie Robinson, and Surveillance Team Members John/Jane Doe 1-99 were members of RCP's surveillance team at the time of the incident giving rise to this action

be arrested and prosecuted.  Brown, however, denied taking any RCP product.  After Amburgey had questioned her, Brown was told not to return to RCP and was escorted off RCP's premises by a uniformed police officer.

At the time Brown was questioned, her employment was governed by the terms of a collective bargaining agreement between RCP and LOCAL 2302 of UNITE, AFL-CIO ("UNITE") (the "Agreement").  The Agreement states, in relevant part:

> [RCP has] the exclusive right to manage the plant, direct the working forces, including the right to hire, transfer, promote or demote, discipline, suspend or to discharge for just cause, and to lay off employees; provided, however, that if any disciplinary action should be taken hereunder, such action shall be subject to the grievance and arbitration procedure provided in Article XII of this Agreement.

On the day following the questioning, Amburgey located the items she had believed were stolen.  Amburgey called Brown and told her that she could return to work.  Brown returned to work on August 17, 2005, as a third-shift supervisor, but claims that she was forced to resign on January 17, 2007.[4]  Upon her resignation, Brown alleges that she did not receive a portion of the wages she was owed by RCP.

Brown filed this action against RCP asserting claims in her Amended Complaint for intentional infliction of emotional distress, false imprisonment, negligent supervision, violation of 42 U.S.C. § 1983, and violation of KRS 337.[5]  In their motion to dismiss, Defendants contend that Brown's claims for intentional infliction of emotional distress, false imprisonment, and negligent supervision are preempted

---

[4] Brown's employment as a third-shift supervisor was not governed by the terms of the Agreement.

[5] Jurisdiction in this court is based on both federal question and diversity.

by § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185.[6]  Defendants also

contend that the lack of state action requires dismissal of Brown's § 1983 claim.

## DISCUSSION

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the district court must accept all of the allegations in the complaint as true, and construe the

complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691

(6th Cir.1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995)).  The court must determine

whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell

Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.  Additionally, even

though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be

enough to raise a right to relief above the speculative level on the assumption that all the allegations in

the complaint are true." *Id*.

A party moving for summary judgment has the burden of showing that there are no genuine

issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H.

Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d

1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary

judgment.  The disputed facts must be material.  They must be facts which, under the substantive law

governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct.

---

[6] In support of their contention that Brown's intentional infliction of emotional distress, false imprisonment, and negligent supervision claims are preempted by the LMRA, Defendants have submitted the Agreement as an exhibit as well as an affidavit stating that the Agreement was in effect during Brown's employment with RCP.  The court previously entered an order informing the parties that Defendants' motion to dismiss is converted into a motion for summary judgment with respect to these claims and allowing them time to provide any additional evidence to the court with respect to the applicability of the Agreement to Brown's employment (DN 48).

2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.*  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

**State Law Claims**

Defendants contend that Brown's state law claims for intentional infliction of emotional distress, false imprisonment, and negligent supervision are preempted by § 301 of the LMRA.

Section 301of the LMRA provides federal district courts jurisdiction over suits "for violation of contracts between an employer and a labor organization representing employees," 29 U.S.C. § 185(a). The Supreme Court has recognized that § 301 preempts state law claims that "are inextricably intertwined with the consideration of a labor contract" as well as pure contract claims.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).  "[A] suit... alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Decoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (quoting *Allis-Chalmers*, 471 U.S. at 210).  Section 301 preemption extends to those state law claims that are "substantially dependent on analysis of a collective bargaining agreement," and does not reach those claims that only "tangentially involve CBA provisions."  *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (quoting *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799-800 (6th Cir.1990)).

In the Sixth Circuit, a plaintiff's state law claim is preempted by § 301 if either proof of the plaintiff's claim requires interpretation of collective bargaining agreement terms, or the right claimed by

- 4 -

the plaintiff is created by the collective bargaining agreement.  *Decoe*, 32 F.3d at 216.  The court is not bound by the well-pleaded complaint rule in making these determinations, but rather looks to the essence of the plaintiff's claim in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort.  *Id.*

Brown's false imprisonment claim is based on her allegation that she was unlawfully detained while being questioned about her suspected involvement in the commission of a theft crime against RCP. Under Kentucky law, in order to recover for the tort of false imprisonment, Brown must establish that she was detained and that the detention was unlawful.  *Wal-Mart Stores, Inc. v. Mitchell*, 877 S.W.2d 616, 617 (citing *Great Atlantic & Pacific Tea Co. v. Smith*, 281 Ky. 583, 136 S.W.2d 759 (1939)).  A detention is unlawful if it is "wrongful, improper, or without claim of reasonable justification, authority, or privilege."  *Banks v. Frisch*, 39 S.W.3d 474, 479 (Ky.App. 2001)

The Agreement, which Brown does not dispute governed the terms of her employment at the time she alleges she was unlawfully detained, gives RCP the right to manage the plant, direct the working forces, and discipline employees for cause.  Defendants contend that the question of whether Brown's detention was unlawful cannot be answered without reference to these provisions of the Agreement.  The court disagrees.  Brown's false imprisonment claim does not implicate these provisions.  Brown's detention cannot be characterized as "discipline" such that an interpretation of the discipline provision is necessary to determine whether the detention was unlawful.  At best, Brown's false imprisonment claim is only tangentially related to this provision.  *Alongi*, 386 F.3d at 724.  Moreover, the court does not find that an interpretation of the broad provisions giving RCP the right to manage the plant and direct the working forces is required to determine whether the detention in this case was unlawful.  In the absence of a more specific provision relating to the right to detain employees while confronting them with allegations of misconduct, the court does not find that proof of Brown's claim requires interpretation

- 5 -

of the Agreement.  *See Weatherholt v. Meijer Inc.*, 922 F.Supp. 1227, 1232 (E.D.Mich. 1996) (concluding that § 301 did not preempt employee's false imprisonment claim based on employee's allegation that employer unlawfully detained and questioned her regarding her involvement in the theft of employer's merchandise because employer failed to proffer evidence of a specific CBA provision directly implicated by employee's claim); *see also Mathis v. Boeing Co.*, 684 F.Supp. 641, 645 (W.D.Wash.1987) (section 301 did not preempt false imprisonment claim because the collective bargaining agreement did not "give [the employer] the right to forcibly detain employees for substantial periods of time against their will," even though that agreement expressly recognized the employer's right to conduct security interviews).  Accordingly, Brown's false imprisonment claim is not preempted and will not be dismissed at this time.

Brown's negligent supervision claim, however, is preempted.  This claim is based on Brown's allegation that Defendants had a duty to supervise its employees to protect her from injury stemming from its surveillance, theft interrogation, and loss management procedures.  Brown alleges that Defendants knew or should have known that its employees were unfit to perform such surveillance, theft interrogation, and loss management procedures.  Section 301 preempts this claim because "any duty relating to the hiring, supervision or retention of employees in the collective bargaining context... arise[s] solely from the collective bargaining agreement... [and] resolution of these types of claims... require interpretation of that agreement."  *Weatherholt*, 922 F.Supp. at 1233 (citing *Morris v. Ambassador Nursing Home, Inc.*, 854 F.Supp. 1164, 1167-68 (E.D.Mich. 1994) ("[t]he nature of [the employer's] obligation to plaintiff with respect to its hiring, supervision and retention of [its employees] is governed by the CBA by virtue of its reference to [the employer's] policies for employee conduct and discipline")); *see also Alvarez v. United Parcel Service Co.*, 398 F.Supp.2d 543, 553 (N.D.Tex. 2005) (finding employee's negligent supervision claim preempted because collective bargaining agreement addressed

the issue of discipline and "[a]ny duty to effectively supervise employees, or breach of such duty, is inextricably intertwined with the issue of discipline").

Because Brown's negligent supervision claim is preempted by § 301 and because Brown failed to raise such claim in accordance with the provisions of the Agreement, the court cannot review it at this time.  *See Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1038-39 (6th Cir. 1989).  Accordingly, Brown's negligent supervision claim will be dismissed.  *See id.*

Brown has conceded that her intentional infliction of emotional distress claim is based solely on Defendants' conduct toward her after she returned to RCP as a third-shift supervisor on August 17, 2005. Accordingly, to the extent Brown's Amended Complaint alleges that Defendants are liable for intentional infliction of emotional distress for their conduct occurring prior to August 17, 2005, such claim will be dismissed.

To the extent Brown alleges that Defendants are liable for intentional infliction of emotional distress for their conduct on or after August 17, 2005, it is undisputed that Brown's employment at this time was not governed by the terms of the Agreement, and that such claim is not preempted by § 301. Defendants, however, argue that Brown's allegations are not sufficient to state a claim for intentional infliction of emotional distress.  Brown alleges in her Amended Complaint that after she returned to work RCP managers made a concerted effort to force her from her employment, she received a demotion from third-shift supervisor to bunch press operator, RCP did not pay her all of the wages which she was due, and her job performance was scrutinized to a higher degree than other similarly-situated RCP employees.

To establish a claim for intentional infliction of emotional distress under Kentucky law, a plaintiff must show: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against generally acceptable standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and emotional distress; and (4) severe

emotional distress. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). The burden of proof is rather high in intentional infliction of emotional distress cases as the plaintiff must demonstrate conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 789 (quoting Restatement (Second) of Torts § 46(1) cmt. d)).

The standard for a motion to dismiss is also high as the court must accept Brown's allegations as true and Defendants must show that Brown's Amended Complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974.[7] The court cannot conclude at this stage of the proceedings that Brown's broad allegations of Defendants' conduct fail to state a claim for intentional infliction of emotional distress that is plausible on its face. Accordingly, such claim will not be dismissed at this time.

Brown's claim for violation of KRS 337 is based on her allegation that she did not receive a portion of the wages she was owed by RCP after resigning from her employment. Defendants have not moved to dismiss this claim.

**Section 1983 Claim**

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim arising under § 1983, a plaintiff must allege: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be

---

[7]Although the court previously converted Defendants' motion to dismiss into a motion for summary judgment with respect to Brown's claim for intentional infliction of emotional distress, the court did so in order to consider the applicability of the Agreement to Brown's employment. With limited exceptions, the parties have yet to conduct discovery in this action (*see* DN 44 Order Staying Discovery Pending Ruling on Motion to Dismiss). As such, neither party has submitted evidence regarding the merits of Brown's claims. Accordingly, the court finds it proper to consider the merits of Brown's intentional infliction of emotional distress claim in light of the motion to dismiss standard.

subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000).  Defendants do not argue that Brown has failed to sufficiently allege that they deprived her of her Fourth, Fifth, and Fourteenth Amendment rights.  Defendants do contend that Brown has failed to sufficiently allege that they acted under color of state law.

Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities.  "As a matter of substantive constitutional law the state action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  Liability under § 1983, however, is not limited to state actors.  A private party can be held to constitutional standards when its actions are "fairly attributable to the state."  *Romanski v. Detroit Entertainment, LLC*, 428 F.3d 629, 636 (6th Cir. 2005) (quoting *Lugar,* 457 U.S. at 937)).

The Sixth Circuit applies three tests to determine whether the challenged conduct was taken under color of state law in order to hold defendants liable under § 1983: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.  *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state such as holding elections, exercising eminent domain, and operating a company-owned town. *Chapman*, 319 F.3d at 833-34.  This test has been interpreted narrowly.  Courts have consistently held that the mere fact that the performance of private security functions may entail the investigation of a crime does not transform the individual investigating the crime into a state actor. *See id.* at 834.  Brown has failed to allege that Defendants acted under color of state law under this test.

The state compulsion test requires that the state "exercise such coercive power or provide such significant encouragement... that in law the choice of the private actor is deemed  to be that of the state."

*Wolotsky*, 960 F.2d at 1335. The plaintiff must demonstrate that the state offered "more than mere approval or acquiescence in the initiatives of the private party." *Id.* Brown does not allege that Amburgey was acting at the behest of, or otherwise controlled by, the police officers. Although Brown alleges that the police officers talked to her, and were present when Amburgey questioned her, these allegations are insufficient to establish that the officers exercised coercive power over Amburgey or significantly encouraged her actions. Accordingly, Brown has failed to allege that Defendants were acting under state compulsion.

Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (quoting *Wolotsky*, 960 F.2d at 1335). "[I]t must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of Section 1983." *Wolotsky*, 960 F.2d at 1335. In explaining this standard, the Supreme Court has noted that, "what is fairly attributable to the state is a matter of normative judgment, and the criteria lacks simplicity... no one fact can function as a necessary condition across the board for finding state action. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295-96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). Such an inquiry is a highly fact-bound, focusing on the nature of the relationship between the state and private actor in light of the "framework of the peculiar facts or circumstances present." *Lansing*, 202 F.3d at 830 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). The Sixth Circuit has held that "mere cooperation [between a private actor and the state] does not rise to the level of merger required for finding state action." *Lansing*, 202 F.3d at 831.

In this case, Brown alleges that she was called into Amburgey's office and was met by multiple police officers; she was told by Amburgey that unless she cooperated she would be placed under arrest upon the arrival of other detectives; she was told by Amburgey "and/or" the police officers that she should confess and make it easier on herself rather than waiting for detectives to arrive and having to spend time in jail; she was told by the police officers that she must be guilty because she was so upset; she was asked by two of the officers, while Amburgey was out of the room, whether she knew the meaning of the term "fencing" and whether it was worth facing time when all she had to do was confess; and she was escorted by a police officer through the plant to collect her personal belongings. Brown also alleges that Defendants engaged in a conspiracy with the officers to deprive her of her constitutional rights. Brown, however, has not sufficiently alleged a conspiracy. Neither has Brown alleged concerted action between Defendants and the officers. Rather, Brown has simply alleged that the officers were present while Amburgey questioned her, and that they also talked with her about Defendants' surveillance and observations. At best, Brown alleges mere cooperation between the officers and Defendants. Mere cooperation, however, does not rise to the level required for finding state action under the nexus test. *Lansing*, 202 F.3d at 831.

Because Defendants were not acting under color of state law, they may not be held liable under § 1983. Accordingly, Brown's § 1983 claim will be dismissed.

A separate order will be entered herein this date in accordance with this opinion.